## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**JOHN ROHDE,**
**individually and on behalf of all others similarly situated,**

  **Plaintiff,**

**v.**

**RENEWABLE ENERGY SYSTEMS LIMITED, a foreign company, and**
**RENEWABLE ENERGY SYSTEMS AMERICAS INC., a Delaware corporation,**

  **Defendants.**

---

## INDIVIDUAL AND CLASS ACTION COMPLAINT

---

The Plaintiff, John Rohde ("Rohde"), individually and on behalf of all others similarly situated, through his undersigned attorneys from HKM Employment Attorneys, LLP, and pursuant to the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA"), Colorado's Anti-Luring Statute, C.R.S. § 8-2-104 ("CALS"), Colorado's Equal Pay for Equal Work Act, C.R.S. § 8-5-101 *et seq.* ("CEPEWA"), and Colorado common law, as his Individual and Class Action Complaint against the Defendants, Renewable Energy Systems Limited ("RES Global") and Renewable Energy Systems Americas Inc. ("RES Americas"), states as follows:

## NATURE OF THE CASE

1.  John Rohde ("Rohde") was employed by the Defendants as Chief Executive Officer of Renewable Energy Systems Americas from September 8, 2021 to March 11, 2024, when he was terminated for challenging the Defendants' unfair wage practices.

1

2.      The Defendants violated Rohde's rights, and the rights of hundreds of other RES Americas employees ("Class Members") under the CWA by failing to pay them wages and compensation that they earned during the 2022-2023 fiscal year, specifically the RES Americas Business Unit ("BU") performance bonus.

3.      In addition and in the alternative to the Class Members' CWA claims, the Defendants breached their implied covenant of good faith and fair dealing by exercising discretion that they possessed under written agreements with the Class Members in a manner that was arbitrary, unfair, and contrary to the reasonable expectations of the Class Members.

4.      In addition, Rohde individually asserts that the Defendants violated his rights under the CWA by failing to pay him all of the wages and compensation due to him upon termination, and by failing to tender such wages within 14 days of receiving a written demand from Rohde. *See* C.R.S. § 8-4-109.

5.      The Defendants also violated the CALS by bringing Rohde to work for them in Colorado through false and deceptive representations and false pretenses. Specifically, the Defendants induced Rohde to leave a lucrative position with his prior employer (with whom he had worked for 20 years), by omitting material information regarding tens of millions of dollars of losses they had incurred and were bound to incur due to years of mismanagement, poor performance, and undue risks. *See* C.R.S. § 8-2-104.

6.      In addition and in the alternative to violating the CALS, the Defendants' conduct also constitutes fraudulent concealment under Colorado common law.

7.      The Defendants terminated Rohde's employment because he inquired about, disclosed, compared, and discussed his wages and the wages of the other Class Members, and

because he complained about the Defendants' bad faith refusal to pay the annual BU performance bonus owed to him and the other Class Members. In doing so, the Defendants committed retaliation in violation of the CWA and the CEPEWA. *See* C.R.S. §§ 8-4-120, 8-5-102.[1]

8.     On behalf of himself and the other Class Members, Rohde seeks unpaid wages, applicable mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II) due to the willful nature of the Defendants' violations, reasonable attorneys' fees, and costs, or in the alternative, actual and compensatory damages incurred by the Class Members as a result of the Defendants' breach of their implied covenant of good faith and fair dealing. *See* C.R.S. §§ 8-4-109(3), 8-4-110.

9.     Individually, Rohde also seeks unpaid wages, mandatory and additional penalties under the CWA, actual and compensatory damages for violations of the CALS and fraudulent concealment, back pay, front pay, interest on unpaid wages, a penalty of fifty dollars per day from the date of Rohde's termination to the date of judgment, liquidated damages, reasonable attorney's fees, and costs. *See* C.R.S. §§ 8-4-109(3), 8-4-110, 8-4-120, 8-5-104.

## PARTIES

10.     Rohde is a Texas domiciliary who can be contacted through his counsel, HKM Employment Attorneys, LLP, 518 17th Street, Suite 1100, Denver, Colorado 80202.

---

[1] The Defendants' retaliation also violated Colorado's Wage Transparency Act, C.R.S. § 24-34-402(1)(i) ("WTA"). Rohde has filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") to exhaust his administrative remedies under the WTA. Upon receiving a Notice of Right to Sue from the CCRD, Rohde intends to amend his Complaint to add his WTA claim.

11.    At all times relevant to this Complaint, Rohde worked for the Defendants in Colorado and was an "employee" entitled to the protections of the CALS, the CWA, the CEPEWA, and Colorado common law. *See* C.R.S. § 8-4-101(5).

12.    RES Global is a multinational company with its principal office in Kings Langley, England. At all times relevant to this Complaint, RES Global did business in Colorado through RES Americas.

13.    RES Americas is a multinational corporation with its principal office at 1601 19th Street, Denver, Colorado 80202.

14.    At all times relevant to this Complaint, the Defendants were "employers" who did business in Colorado and were therefore subject to the requirements and prohibitions of Colorado law. *See* C.R.S. § 8-4-101(6).

## JURISDICTION AND VENUE

15.    Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there exists complete diversity between Rohde and the Defendants and the amount in controversy exceeds $75,000.00. *See e.g.*, C.R.S. § 8-4-109(3)(b)(II) (providing for quadruple damages for willful CWA violations).

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Rohde worked for the Defendants in Colorado, and thus the events giving rise to his claims occurred in this District.

## **FACTUAL ALLEGATIONS**

18.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

19.     RES Americas is a multinational corporation that is primarily engaged in the renewable energy business.

20.     RES Global is the parent company of RES Americas.

21.     At all times relevant to this Complaint, RES Global exercised substantial control over RES Americas, including over its management and its human resources management.

22.     At all times relevant to this Complaint, the Defendants jointly determined the essential terms and conditions of the Class Members' employment.

23.     At all times relevant to this Complaint, the Defendants employed thousands of employees in dozens of countries, including the United States.

24.     At all times relevant to this Complaint, the Defendants did business in Colorado as part of the State's energy industry.

25.     Rohde was employed by the Defendants as Chief Executive Officer of Renewable Energy Systems Americas from September 8, 2021 to March 11, 2024, when he was terminated for challenging the Defendants' unfair wage practices.

26.     At all times relevant to this Complaint, Rohde worked for the Defendants out of their Colorado headquarters at 1601 19th Street, Denver, Colorado 80202.

27.     At all times relevant to this Complaint, Rohde performed his job successfully, satisfactorily (Exceeds Expectations), and in accordance with the Defendants' legitimate expectations.

28.     During the Summer of 2021, the Defendants lured Rohde to leave his lucrative job at ENGIE North America through false and deceptive representations, and through false pretenses.

29.     Rohde had been working at ENGIE, and had been very successful at that company, for 20 years.

30.     The Defendants led Rohde to believe that RES Americas was thriving, while omitting material information regarding tens of millions of dollars of losses they had incurred and were bound to incur due to years of mismanagement, poor performance, and undue risks.

31.     For example, the Defendants knew, but did not disclose to Rohde, that they were engaged in risky customer disputes/litigation that would cost RES Americas millions of dollars.

32.     The Defendants also knew, but did not disclose to Rohde, that their solar construction project was performing very poorly prior to Rohde coming to work at RES Americas.

33.     The Defendants also knew, but did not disclose to Rohde, that they were shutting down their wind turbine construction business because that business had lost tens of millions of dollars over several years.

34.     Additionally, the Defendants knew, but did not disclose to Rohde, that they had sold their entire U.S. Development pipeline, and that the pipeline had to be completely rebuilt.

35.     Being aware of these material facts, the Defendants also knew that equity and good conscience required them to disclose their prior mismanagement, poor performance, and undue risks to Rohde.

36.     The Defendants are private companies. As such, their mismanagement, poor performance, and undue risks were not matters of public record and Rohde did not have access to this information before he went to work for the Defendants.

37.     Because the Defendants did not disclose the facts regarding their mismanagement, poor performance, and risks to Rohde, the Plaintiff was ignorant of these facts until he left his job of 20 years and uprooted his life to work at RES Americas.

38.     To induce Rohde to leave his job with ENGIE, the Defendants represented that he would receive an annual salary, plus: (A) an annual bonus; and (B) long-term incentive ("LTI") payments.

39.     The annual bonuses to be paid to Rohde – and to the other Class Members – was to have two components: (1) a payment based on personal performance and safety; and (2) a payment based on the business unit and the global business financial performance, to be paid if/when Profit Before Tax targets were reached.

40.     Such annual bonuses were promised to Rohde and the other Class Members verbally and in writing.

41.     Rohde was one of hundreds of RES Americas employees who were promised annual bonuses. Of those hundreds of employees, the majority worked for the Defendants from Colorado.

42.     In addition to promising Rohde performance-based bonuses and LTI, the Defendants also agreed to provide Rohde with 12 months' notice prior to terminating his employment, or to provide him with pay in lieu of such notice.

43.     It was and is Rohde's understanding that the pay he would receive "in lieu of notice" would include full salary, benefits, bonuses, and LTI for 12 months.

44.     But for the Defendants' concealment of their mismanagement, poor performance, and risks, and their promises regarding bonuses, LTI, and pay in lieu of notice, Rohde would not have accepted the Defendants' job offer in the Summer of 2021.

45.     As a result of the Defendants' representations and omissions, Rohde left his job at ENGIE, where he had been consistently successful for 20 years.

46.     The Defendants' fiscal years run from November of one year to the end of October of the next year. As such, their 2022-2023 fiscal year ended in October 2023.

47.     Contrary to their representations to Rohde, the Defendants did not pay Rohde an annual BU or Global performance bonus for the 2021-2022 fiscal year, nor did they pay Rohde LTI for that fiscal year.

48.     Contrary to their agreements with Rohde and the other Class Members, the Defendants did not pay the bonuses earned by RES Americas employees for the 2022-2023 fiscal year. Instead, the Defendants manipulated their annual numbers to impute losses that had been incurred during prior fiscal years (and caused by prior management) to the 2022-2023 results.

49.     As a result of this manipulation, the Defendants did not pay Rohde, or hundreds of other RES Americas employees, the BU performance bonuses they earned and should have received for the 2022-2023 fiscal year.

50.     Rohde is not currently in possession of all of the records necessary to determine the precise amounts of the bonuses that he and the other Class Members earned.

51.     Based on his personal knowledge and observations during his employment with the Defendants, Rohde is aware that business unit performance of the RES Americas employees was

sufficiently strong for the Class Members to receive their BU performance bonuses for the 2022-2023 fiscal year.

52.     In total, Rohde estimates that he earned, and should have been paid, bonuses and LTI totaling $1,000,000 for the 2021-2022 fiscal year and $1,079,998.00 for the 2022-2023 fiscal year. Instead, the Defendants paid him only a single bonus of $180,000 and $140,000.00 respectively, for safety and personal performance at Exceeds Expectations, for his work in each fiscal year.

53.     In total, the Defendants also failed to pay the Class Members approximately two million dollars of BU performance bonuses that they earned during the 2022-2023 fiscal year.

54.     In early November 2023, Rohde learned that the Defendants were planning not to pay bonuses that were earned by RES Americas employees for the 2022-2023 fiscal year.

55.     Rohde immediately and vociferously challenged that decision in communications with RES Americas and with its parent company, RES Global.

56.     During discussions with RES Americas Vice President of Human Resources Heather Jackson, Chief Operations Officer AJ Jain, and General Counsel Marcia Emmons in November 2023, Rohde told the Defendants that he was very upset about the way they were treating him and the hundreds of other RES Americas employees.

57.     Throughout November and December 2023, Rohde continued to discuss his concerns about the non-payment of employee bonuses with RES Global Chief Executive Officer Eduardo Medina, with RES Global Chief Financial Officer Richard Russell, with RES Group Head of Human Resources Maria Irvine, and with RES Group General Counsel Dominic Hearth. During

these discussions, Rohde told the Defendants that they were "screwing" the RES Americas employees.

58.     Subsequently, Rohde attempted to advocate on behalf of himself and the other RES Americas employees in communications with RES Global, in an effort to prevent the Defendants from subjecting their employees to such arbitrary and unfair wage practices in the future.

59.     As a result of Rohde's advocacy, the Defendants became increasingly hostile to Rohde. RES Americas Interim Chief Financial Officer Björn Heuckeroth even impeded the Plaintiff's attempt to gather information from RES Americas Financial Planning & Analysis team that he could use to advocate for RES Americas employees and told his team not to respond to Rohde with the information he was requesting.

60.     On March 11, 2024, the Defendants terminated Rohde's employment because he challenged their unfair wage practices.

61.     On March 12, 2024, the Defendants paid Rohde $533,999.98 – his base salary for 12 months – instead of the agreed "in lieu of notice" requirement to pay him full pay, benefits, bonuses, and LTI as they had agreed to do.

62.     On March 20, 2024, Rohde sent a CWA demand to the Defendants, seeking immediate payment of the wages and compensation that were promised to him "in lieu of notice" if he came to work for the Defendants.

63.     Rohde sent his demand to the same email address through which the Defendants had communicated with him on March 12, 2024. Thus, while the Defendants later claimed that they did not receive Rohde's demand on March 20, 2024, Rohde has every reason to believe that they did in fact receive his demand on the day it was sent.

64.     On April 11, 2024, the Defendants' counsel sent Rohde a letter denying that he was entitled to any compensation under the CWA, but agreeing to pay him a second installment of a "Special Retention Award" that he had been promised in January 2023. The Defendants then deposited the "Special Retention Award" installment of $133,334.00 into Rohde's account.

65.     The Defendants did not pay Rohde any of the other wages he demanded in his CWA demand, and its payment of the "Special Retention Award" was not made within 14 days of the Defendants' receipt of the demand. As such, the Defendants owe Rohde all of his other wages and compensation, including bonuses, LTI, and benefits, as well as statutory penalties under the CWA. The amounts owed to Rohde are now in excess of three million dollars.

66.     At all times relevant to this Complaint, the Defendants knew, or through the exercise of reasonable diligence should have known, that their actions towards Rohde were contrary to the CWA, the CALS, the CEPEWA, and Colorado common law. As such, the Defendants' violations of Colorado law were willful.

67.     The Defendants' conduct has caused Rohde substantial economic and non-economic harms, including lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to social and professional standing, injury to character or reputation, humiliation, indignity, harm to personal relationships, loss of self-esteem, and immeasurable, permanent harm to Rohde's career and his future prospects. These harms are ongoing.

## **CLASS ALLEGATIONS**

68.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

69.     In addition to bringing his claims individually, Rohde also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of the following Class:

> **All individuals who worked for RES Americas in positions where they were eligible for annual bonuses during the 2022-2023 fiscal year.**

70.     This Class satisfies the prerequisites and requirements of Fed. R. Civ. P. 23:

a.  The Class consists of hundreds of employees. Joinder of all such employees would be impracticable.

b.  There are questions of law and fact that are common to the Class Members that predominate over questions affecting only individuals, including but not limited to:

   i.   Whether the Class Members' business unit performance was sufficiently strong during the 2022-2023 fiscal year for the Class Members to receive bonuses;

   ii.  Whether the business unit performance bonuses were "wages" and/or "compensation" under the CWA;

   iii. Whether the Defendants violated the CWA by failing to pay bonuses to RES Americas employees for the 2022-2023 fiscal year;

   iv.  Whether the Defendants breached their implied covenant of good faith and fair dealing by failing to pay bonuses to RES Americas employees for the 2022-2023 fiscal year; and

   v.   Whether the Defendants' violations of Colorado law were willful.

    c.   Rohde's claims are typical of the Class Members' claims because he was subject to the same non-payment of bonuses, and the same bad faith and fair dealing, as the other Class Members.

    d.   Rohde will fairly and adequately protect the interests of the Class. He has retained counsel that is experienced in wage and hour class litigation, and he and his counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class.

71.    The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants and would not serve the interests of judicial economy. Adjudications with respect to individual Class Members would, as a practical matter, be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests.

72.    Moreover, the Defendants have acted upon grounds that are generally applicable to the Class, and are likely to bring the same defenses in response to the Class Members' claims.

73.    To date, no Class Member other than Rohde has commenced their own lawsuit against the Defendants based on the claims set forth in this Complaint.

## CLASS CLAIMS

## CLAIM I

### WAGE THEFT IN VIOLATION OF THE COLORADO WAGE ACT

### C.R.S. § 8-4-101 *et seq.*

74.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

75.     The CWA requires employers to pay all "wages" and "compensation" earned by employees in a timely manner, which generally must be 30 days or fewer from the date on which the wages/compensation are earned. C.R.S. § 8-4-103(1)(a).

76.     The CWA also requires employers to pay employees all earned wages and compensation immediately upon termination. C.R.S. § 8-4-109(1).

77.     The CWA defines "wages" and/or "compensation" to include: "(I) All amounts for labor or service performed by employees [that are] earned, vested, and determinable;" (II) "Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement;" "(III) vacation pay earned in accordance with the terms of any agreement;" and (IV) "'Paid sick leave' as provided in [the Healthy Families and Workplaces Act]." C.R.S. § 8-4-101(14)(a).

78.     A bonus is wages/compensation due to an employee if/when it is: (A) "earned," meaning that the employee performed the work they had to perform; (B) "in accordance with the terms of any agreement," meaning that any *lawful* conditions that had to be met before the bonus would be paid were in fact met; and (C) "determinable," meaning that the dollar amount of the bonus/commission was capable of being calculated. *See* C.R.S. § 8-4-101(14)(a)(I) and (II); *see*

14

*also Nieto v. Clark's Market, Inc.*, 2021 CO 48 ¶ 18 (defining "earned" as meaning "owed as a return for… work done or services rendered").

79.     An employer may not refuse to pay wages/compensation earned by an employee merely because the employee is no longer employed at the time of payment. *See Nieto*, 2021 CO 48 ¶¶ 10-24; C.R.S. § 8-4-121 ("Any agreement… purporting to waive or modify [an] employee's rights in violation of this article shall be void"); *see also Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp.2d 1110, 1120 (D. Colo. 2013) (policy requiring that employee "must be an active Team Member at time of payout" improperly introduced "a condition for the payment of bonuses that otherwise have already vested and are already determinable"); *see also Rohr v. Ted Neiters Motor Co*, 758 P.2d 186, 188 (Colo. App. 1988) (bonus was "earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for… months thereafter").

80.     Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to "tender" such wages/compensation within 14 days of receiving a "written demand" are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;" or (B) quadruple damages, if the employee *is* able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b); *see Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶¶ 12-14 ("penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days"). A violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); C.R.S. § 8-4-109(3)(b)(II).

15

81.     In addition, employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages. C.R.S. § 8-4-110(b); *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014) (holding that CWA contains rebuttable presumption that prevailing employee is entitled to fees and costs).

82.     At all times relevant to this Complaint, the Plaintiff and the Class Members were "employees" subject to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

83.     At all times relevant to this Complaint, the Defendants were "employers" as defined by the CWA. *See* C.R.S. § 8-4-101(6).

84.     The Defendants violated the CWA by failing to pay Rohde and the other Class Members bonuses that they earned during the 2022-2023 fiscal year.

85.     Because the Defendants knew or, through the exercise of reasonable diligence should have known, that their actions violated the CWA, the Defendants' violations were willful as a matter of law. *See* C.R.S. §§ 8-4-109(3)(c).

86.     Because the Defendants willfully violated the CWA, they are liable to Rohde and the other Class Members for all unpaid wages, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), and all reasonable attorney's fees and costs incurred by the Class in obtaining their wages/compensation. *See* C.R.S. §§ 8-4-109(3), 8-4-110(1)(b).

## CLAIM 2

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

87.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

88.     In Colorado, every agreement that gives one party discretion to determine terms of the agreement includes "an implied covenant of good faith and fair dealing." *Kirkland v. Robert W. Baird & Co.*, No. 18-CV-02724-MSK-SKC, 2020 WL 1452165, at *8–9 (D. Colo. Mar. 25, 2020) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)).

89.     To prove a violation of the implied covenant of good faith and fair dealing, a plaintiff must establish: (1) the existence of a contract with a term that allowed for discretion by the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform under the relevant term in a manner consistent with the parties' reasonable expectations; and (4) resulting damages to the plaintiff. *Id.*

90.     In the alternative to Rohde's and the Class Members' CWA claims set forth above, and to the extent that the agreements between the Defendants and the Class Members allowed discretion in the payment of bonuses, the Defendants breached their implied covenant of good faith and fair dealing with the Class Members.

91.     To Rohde's knowledge, the business unit financial performance of the Class Members was sufficiently strong during the 2022-2023 fiscal year to entitle the Class Members to Business Unit bonus.

92.     Despite the Class Members' performance of their duties under their agreements with the Defendants, the Defendants manipulated their numbers for the 2022-2023 fiscal year so that they would not have to pay bonuses to the Class Members. In doing so, the Defendants failed to perform in a manner consistent with the Class Members' reasonable expectations.

93.     As a result of the Defendants' breach of their implied covenant of good faith and fair dealing, Rohde and the other Class Members were deprived of millions of dollars of bonuses.

## **ROHDE'S INDIVIDUAL CLAIMS**

## **CLAIM 3**

### **VIOLATION OF COLORADO'S ANTI-LURING STATUTE**

### **C.R.S. § 8-2-104**

94.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

95.     Colorado's Anti-Luring Statute declares:

> It is unlawful for any person, company, corporation, society, association, or organization of any kind doing business in this state, by itself or its agents or attorneys, to induce, influence, persuade, or engage workmen to change from one place of employment to another in this state, or to bring workmen of any class or calling into this state to work in any of the departments of labor in this state, through or by means of false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work…

96.     The Defendants violated the CALS by luring Rohde to come work for them in Colorado by false and deceptive means, and under false pretenses.

97.     Specifically, the Defendants omitted vital and material information regarding their mismanagement, poor performance, and undue risks, and in doing so misrepresented the kind of character of the work Rohde would be doing, and the compensation he would be paid for his work.

98.     Rohde relied on the Defendants' misrepresentations to negotiate his compensation package and came to work for the Defendants in Colorado.

99.     Rohde was justified in relying on the Defendants' representations because he did not have access to the material information they withheld.

100.    As a result of his reliance on the Defendants' misrepresentations, Rohde was severely harmed. He upended his life and left a lucrative position with a company for which he had worked for 20 years. He was wrongfully terminated and has lost millions of dollars in income. His career, and his ability to make a living, have been irreversibly damaged. All of this harm was caused by the Defendants' fraudulent conduct, and this harm is ongoing.

## CLAIM 4

### FRAUDULENT CONCEALMENT

101.    Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

102.    In Colorado, a claim for fraudulent concealment consists of the following elements:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1098 (D. Colo. 2022) (citing *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011)).

103.    The Defendants concealed material facts regarding their mismanagement, poor performance, and undue risks to induce Rohde to leave his job at ENGIE and come to work for them in Colorado. Equity and good conscience required the Defendants to disclose such material information prior to hiring Rohde.

104.    The Defendants knew that the material information regarding their mismanagement, poor performance, and undue risks was not disclosed to Rohde.

105.     Because the Defendants concealed the material information regarding their mismanagement, poor performance, and undue risks, Rohde was not aware of that information, and went to work for the Defendants relying on their misrepresentations.

106.     As a result of the Defendants' fraudulent conduct, Rohde has been immeasurably harmed personally, professionally, and financially.

## CLAIM 5

### WAGE THEFT IN VIOLATION OF THE COLORADO WAGE ACT

### C.R.S. § 8-4-101 *et seq.*

107.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

108.     At all times relevant to this Complaint, Rohde was an "employee" subject to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

109.     At all times relevant to this Complaint, the Defendants were "employers" subject to the requirements and prohibitions of the CWA. *See* C.R.S. § 8-4-101(6).

110.     The Defendants violated the CWA by failing to pay Rohde bonuses and LTI that he earned during his employment. *See* C.R.S. § 8-4-103(1)(a).

111.     The Defendants also violated the CWA by failing to pay Rohde all of the benefits, bonuses, and LTI that he earned by working for them.

112.     The Defendants further violated the CWA by failing to pay Rohde all of his earned wages and compensation at the time of his termination. *See* C.R.S. § 8-4-109(1).

113.     The Defendants further violated the CWA by failing to tender all of the wages and compensation due to Rohde within 14 days of receiving his written demand.

114.     Accordingly, the Defendants are liable to Rohde for unpaid wages, mandatory penalties, and statutory penalties in excess of three million dollars. They are also liable to Rohde for his attorneys' fees and costs incurred in this action. *See* C.R.S. §§ 8-4-109(3), 8-4-110.

## CLAIM 6

### RETALIATION IN VIOLATION OF THE COLORADO WAGE ACT

### C.R.S. § 8-4-120

115.     Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

116.     The CWA prohibits retaliation, declaring:

> An employer shall not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against any employee who has: (a) Filed any complaint or instituted or caused to be instituted any proceeding under this article 4 or any other law or rule related to wages or hours; or (b) Testified or provided other evidence, or may testify or provide other evidence, in any proceeding on behalf of the employee or another person regarding afforded protections under this article 4 or under any other law or rule related to wages or hours.

C.R.S. § 8-4-120(1).

117.     Employers who retaliate against an employee in violation of the CWA may be liable for (I) back pay; (II) reinstatement of employment or, if reinstatement is not feasible, front pay; (III) the payment of wages unlawfully withheld; (IV) interest on unpaid wages at a rate of twelve percent per annum from the date the wages were first due; (V) the payment of a penalty of fifty dollars per day for each employee whose rights under the section were violated and for each day that the violation occurred or continued; (VI) liquidated damages in an amount equal to the greater of two times the amount of the unpaid wages or two thousand dollars; (VII) injunctive relief; and (VIII) attorney's fees and costs. C.R.S. § 8-4-120(3)(a)-(b).

118.    Rohde engaged in protected activity under the CWA, and under other laws and rules related to wages, by complaining and discussing his concerns regarding the Defendants' unfair wage practices. *See* C.R.S. §§ 8-4-101(14)(a)(I), 8-5-102, 24-34-402(1)(i).

119.    The Defendants violated the CWA by terminating Rohde's employment in retaliation for his protected activity.

120.    As such, the Defendants are liable to Rohde for back pay, front pay, unpaid wages, interest on unpaid wages, a penalty of fifty dollars per day, liquidated damages, and attorneys' fees and costs. *See* C.R.S. § 8-4-120(3)(a)-(b).

## CLAIM 7

**RETALIATION IN VIOLATION OF COLORADO'S EQUAL PAY FOR EQUAL WORK ACT**

**C.R.S. § 8-5-101 *et seq.***

121.    Rohde incorporates the allegations in the paragraphs above as if fully set forth herein.

122.    The CEPEWA declares:

An employer shall not:…

Discharge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate…

C.R.S. § 8-5-102(2)(d).

123.    An employer who violates the CEPEWA by terminating an employee because they "inquired about, disclosed, compared, or otherwise discussed the employee's wage rate" may be liable for: "(a) [l]egal and equitable relief, which may include employment, reinstatement,

promotion, pay increase, payment of lost wage rates, and liquidated damages; and (b) [t]he employee's reasonable costs, including attorney fees." C.R.S. § 8-5-104(2).

124.     The Defendants violated the CEPEWA by retaliating against Rohde for inquiring about, disclosing, comparing, and otherwise discussing his wages, and the Defendants' unfair wage practices.

125.     Accordingly, the Defendants are liable to Rohde for back pay, front pay, liquidated damages, attorneys' fees, and costs. *See* C.R.S. § 8-5-104(2).

## PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff respectfully asks that judgment be entered for the Plaintiff and the Class Members, and against the Defendants, and that the Court:

(1) At the earliest time practicable, certify this case as a class action under Fed. R. Civ. P. 23, and appoint Rohde and his counsel to represent the Class;

(2) Award the Plaintiff and the Class Members:

    a.   Unpaid wages in amounts to be determined at trial;

    b.   Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) in an amount equal to two times the unpaid wages awarded to each Class Member;

    c.   Additional penalties under C.R.S. § 8-4-109(3)(b)(II) in an amount equal to the unpaid wages awarded to each Class Member;

    d.   Or in the alternative, actual and compensatory damages for the Defendants' breach of their implied covenant of good faith and fair dealing;

(3) Award the Plaintiff:

    a.   Unpaid wages in an amount to be determined at trial;

    b.   Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I);

    c.   Additional penalties under C.R.S. §8-4-109(3)(b)(I) due to the willful nature of the Defendants' violations;

    d.   Actual and compensatory damages for violations of Colorado's Anti-Luring Statute and fraudulent concealment;

    e.   Back pay in an amount to be determined at trial;

    f.   Front pay in an amount to be determined at trial;

    g.   Interest on unpaid wages at a rate of twelve percent per annum;

    h.   A statutory penalty of fifty dollars per day from the date of the Plaintiff's termination to the date of judgment;

    i.   Liquidated damages in an amount to be determined at trial;

(4) Award the Plaintiff and the Class Members their reasonable attorneys' fees and costs incurred in this action; and

(5) Award the Plaintiff and the Class Members all other and further relief as the Court may find to be equitable, appropriate, and just.

Respectfully submitted on this 26th day of June, 2024

                                */s/ Adam M. Harrison*
                                Adam M. Harrison
                                Cynthia J. Sánchez
                                HKM Employment Attorneys LLP
                                518 17th Street, Suite 1100
                                Denver, Colorado 80202
                                720.255.0370
                                aharrison@hkm.com
                                csanchez@hkm.com
                                *Counsel for the Plaintiff*